# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

### Steven R. COCKRELL,
### Seaman Apprentice (E-2), U.S. Coast Guard

## CGCMG 0190

## Docket No. 1199

## 18 June 2004

General Court-Martial convened by Commander, Seventh Coast Guard District. Tried at Mayport, Florida, on 10 July 2003.

| | |
|---|---|
| Military Judge: | CDR J. A. Maksym, JAGC, USN |
| Trial Counsel: | LT Joseph E. Kramek, USCG |
| Assistant Trial Counsel: | LCDR James D. Carlson, USCG |
| Defense Counsel: | LT Jeffrey J. Truitt, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LCDR John S. Luce Jr., USCG |

### BEFORE
### PANEL ONE
### BAUM, KANTOR, & CAHILL
Appellate Military Judges

BAUM, Chief Judge:

Appellant was tried by general court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of the following offenses: one specification of unauthorized absence for one day, in violation of Article 86, Uniform Code of Military Justice (UCMJ); one specification of wrongful use of marijuana on divers occasions, in violation of Article 112a, UCMJ; and one specification of wrongfully receiving child pornography, one specification of wrongfully possessing child pornography, and one specification of watching child pornography aboard a Coast Guard facility, under circumstances prejudicial to good order and discipline, in violation of Article 134, UCMJ. The military judge sentenced Appellant to a dishonorable discharge, confinement for eighteen

months, forfeiture of all pay and allowances, and reduction to E-1.  The Convening Authority reduced the dishonorable discharge to a bad-conduct discharge, which he approved along with the remainder of the adjudged sentence.  Pursuant to the terms of the pretrial agreement, the Convening Authority also suspended execution of confinement in excess of ten months for a period of eighteen months from the date of sentencing on 10 July 2003.

Appellant has assigned four errors before this Court: (1) that he was not served with a copy of the referred charges in accordance with Rule for Court-Martial (R.C.M.) 602, Manual for Courts-Martial, United States, (2002 ed.) and Article 35, UCMJ, (2) that his pleas were improvident because the military judge failed to ensure that Appellant understood the meaning and effect of each condition of the pretrial agreement, (3) that his plea to "watching child pornography" in violation of Article 134, UCMJ, was improvident because the military judge failed to elicit facts to sufficiently demonstrate that his conduct was prejudicial to good order and discipline, and (4) that he had no constitutionally required notice that watching another person exhibit child pornography is a criminal offense.   The issues in assignments one and four were waived by Appellant's failure to raise and preserve them at trial.  They are rejected for that reason.   Assignments two and three were orally argued on 7 April 2004, and will be addressed.

## Unexplained Pretrial Agreement Provisions – Assignment II

Appellant contends that his pleas are improvident because the military judge failed to ensure that he understood the terms of his plea agreement, specifically, the provisions relating to automatic reduction in paygrade and requiring sexual offender treatment.

### A.  Automatic Reduction in Paygrade Provision

The first challenged provision simply states that Appellant's counsel had advised him of the meaning and effect of Article 58a, UCMJ, regarding the possibility of his being administratively reduced in paygrade as a result of an approved sentence that includes either a punitive discharge or confinement in excess of ninety days or three months.  The problem, as Appellant points out, is that automatic reduction pursuant to Article 58a, UCMJ, does not apply in the Coast Guard.  The Coast Guard's Military Justice Manual expressly states that automatic reduction authorized under Article 58a, UCMJ, "shall as a matter of policy not be effected in the

Coast Guard." COMDTINST M5810.1D ¶ 4.E.1. Consequently, Appellant was incorrectly advised by his defense counsel of the ramifications of Article 58a, UCMJ, and neither the military judge nor the trial counsel did anything to correct the situation. Appellant submits that had he been advised properly that he would not be reduced in paygrade automatically, he might very well have sought protection in his pretrial agreement from an adjudged reduction.

Unquestionably, it was error for the military judge not to explain this particular paragraph of the pretrial agreement to Appellant and correct defense counsel's erroneous advice. Despite the fact that the military judge and defense counsel serve in the Navy where automatic reduction in paygrade under Article 58a, UCMJ, is allowed, they should have familiarized themselves with Coast Guard procedures and properly advised Appellant in this regard. Moreover, trial counsel, who is a Coast Guard lawyer, should have been aware of the Coast Guard regulation with respect to Article 58a, UCMJ, and should have brought it to someone's attention. Trial counsel has a responsibility to do more than simply prosecute the case. He also has a responsibility to ensure that justice is done. That includes helping to create a record that is free from error.

Notwithstanding the erroneous advice concerning automatic reduction, Appellant's argument that he was prejudiced by that advice is unpersuasive, since the pretrial agreement provision in question states that automatic reduction applies, "unless the Convening Authority has agreed in the pretrial agreement to limit the automatic administrative reduction in the paygrade category of punishment." Accordingly, if he was that concerned about the possibility of reduction in paygrade from E-2 to E-1 he, presumably, would have sought protection in the pretrial agreement from both automatic and adjudged reduction. Since he did neither, this aspect of assignment two is rejected.

### B. Sex Offender Treatment Provision

The other plea bargain provision at issue requires Appellant, within two weeks following his release from confinement, to enroll in a sexual offender treatment program approved by the Convening Authority and paid for by Appellant. Paragraph twenty-one of the pretrial agreement reads as follows:

21. As further consideration for this agreement, I agree to voluntarily enroll into, within two weeks following my release from confinement, a private sex offender competency based, weekly treatment program located in the United States that has goals substantially as follows:

1. accepting responsibility;
2. understanding the reasons why offenders commit sexually deviant acts;
3. controlling and managing deviant sexual impulses;
4. acquiring an empathetic understanding of the impact of sexual offenses on both the victim and others;
5. controlling and managing destructive feelings and behaviors;
6. acquiring an accurate understanding of human sexuality and reorienting attitudes and values toward human sexuality;
7. acquiring relapse prevention skills;
8. acquiring relationship and communication skills;
9. and integration back into society.

This treatment shall be at my own expense. I acknowledge that I have resources (from my personal savings, military pay, family gifts, or otherwise) to pay for such treatment. The Convening Authority or her representative, Commanding Officer Coast Guard Group Mayport, must approve the treatment program in advance. In addition to the criteria above, the treatment program I enroll in must also utilize polygraph testing as an essential component of its treatment protocol. I must also execute a privacy waiver (supplied by the Convening Authority) authorizing the treatment program coordinator or her representative to discuss and disclose my attendance, progress and other general details relating to my progress in the treatment program to the Convening Authority or her representative. It is understood that the sexual offender program managed by Community Behavioral Resources, 1543 Kingsley Avenue, Suite 18A, Orange Park, Florida, meets the criteria above and is hereby preapproved. Approval of any other treatment program lies within the sole discretion of the Convening Authority or her representative. **Failure to enroll in an approved treatment program within two weeks following my release from confinement OR failure to remain compliant with treatment SHALL constitute a violation of this condition of my pretrial agreement with the convening authority.** To determine if I have remained compliant with treatment, the Convening Authority will review the information supplied by me as well as my treatment coordinator and make her own determination. It is understood that I must continue attending the treatment program until I receive a certificate of completion and/or the treatment program coordinator notifies the Convening Authority or her representative in writing that I have successfully completed the treatment program. It is understood that the preapproved sexual offender program managed by Community Behavioral Resources is not normally completed in a period of less than six months and the typical duration of treatment is twenty-four months. It is understood that I may transfer treatment programs with the advance approval [of] the Convening Authority or her representative, who

> may solicit an opinion from my treatment coordinator regarding the potential impact of such program change on my treatment prognosis.

Appellate Ex. IV, I-4, ¶ 21 (boldface and underline type in original).

The military judge failed to explain this provision and its ramifications despite the requirement of R.C.M. 910(f) that the military judge ensure an Appellant's understanding of a pretrial agreement. The military judge's responsibility in this regard traces back to the seminal cases of *United States v. Green,* 1 M.J. 453 (C.M.A. 1976) and *United States v. King*, 3 M.J. 458 (C.M.A. 1977), and has been reaffirmed in the recent case of *United States v. Felder*, 59 M.J. 444 (2004). In *Felder,* the Court of Appeals for the Armed Forces restated that R.C.M. 910(f) requires a military judge to make "a meaningful inquiry into the provisions of every pretrial agreement," and that failure to explain a material provision is error. *Felder*, 59 M.J. at 446. Since the pretrial agreement leaves open for determination by the Convening Authority what may constitute "failure to remain compliant with treatment" and what specific actions may be taken in that event, a discussion of this pretrial agreement provision with Appellant on the record assumes added importance. Absent the required inquiry and explanation, the record does not reveal Appellant's understanding of these matters, leaving them to the imagination. If we cannot discern Appellant's understanding of future adverse consequences from this pretrial agreement, can we with confidence conclude that Appellant's pleas of guilty in reliance on it were knowing and voluntary? Appellant says we cannot, contending that the military judge's failure to establish such an understanding of this complex pretrial agreement provision renders the pleas improvident and necessitates our setting aside the findings of guilty.

The Government sees it differently. Citing *United States v. Felder*, the Government asserts that the military judge's failure to explain the provision has not rendered the pleas of guilty improvident. In *United States v. Felder*, the Court of Appeals for the Armed Forces found error by the military judge in not explaining a key provision of the plea bargain, but, nevertheless, concluded that the findings of guilty could be affirmed. *Felder*, 59 M.J. at 445. There is a significant factual difference between our case and *Felder,* however. In *Felder*, the unexplained pretrial agreement provision at issue required the accused to waive motions for sentence credit based on Article 13, UCMJ, and restriction tantamount to confinement, in exchange for a limitation on the sentence. 59 M.J. at 445. The Court of Appeals for the Armed

Forces noted that both the accused and the convening authority had complied with the terms of the pretrial agreement, leaving nothing further to be carried out by either party. *Id*. at 446. Moreover, our higher Court saw indications that the pleas were knowing and voluntary, and that the accused had neither averred nor demonstrated any prejudice resulting from the military judge's error. *Id*. at 446.

In contrast to *Felder*, all pretrial agreement requirements in our case have not yet been met. Sex offender treatment must be completed satisfactorily and potential prejudice to Appellant remains a real possibility. Appellant was sentenced on 10 July 2003. With good time, he should have been released from his ten months confinement sometime in March 2004, with eight months of confinement remaining suspended for eighteen months from the date of sentencing. No information has been provided to this Court on the state of Appellant's current situation, so presumably Appellant was released from confinement on time and has enrolled in an approved sex offender treatment program under the terms of his pretrial agreement. If that is correct, the remaining obligations from the sex offender treatment provision will be hanging over Appellant's head at least until the suspended portion of his sentence expires in January 2005. Any time during that period, the Convening Authority could rule that Appellant has failed to remain compliant with his sex offender treatment.

Without amplification in the pretrial agreement or mutual understanding on the record, noncompliance could mean anything from Appellant's voluntary disenrollment from the program to the Convening Authority's subjective evaluation that Appellant was not making satisfactory progress. Numerous other possibilities come to mind, including, but not limited to, the possibility of Appellant having insufficient funds for continued treatment, a refusal by him to submit to a specific polygraph examination, or, having submitted to a polygraph examination, an assessment by the polygraph examiner of deception by Appellant. Will any of these, or other scenarios, justify adverse action by the Convening Authority, to Appellant's prejudice? The record does not provide answers to this question, nor does the record show us what actions the Convening Authority may take in the event of noncompliance by the Appellant.

Can the Convening Authority vacate the suspended sentence after determining that there has been noncompliance with treatment and, thereby, return Appellant to a confined status for

another eight months?  In his separate opinion, Judge Cahill assumes the Convening Authority can do that, but encourages the Convening Authority to interpret the pretrial agreement provision in a light most favorable to Appellant in any vacation proceeding, should one occur.  I do not believe it sufficient to leave such a matter to the Convening Authority's future interpretation of the agreement.   There should be something in the record reflecting the understandings of the parties at the time of trial.  Paragraph sixteen of the pretrial agreement expressly permits vacation of a suspended sentence for misconduct committed by Appellant after trial, but there is nothing in the pretrial agreement or in the record indicating that failure to comply with the sex offender treatment provision will constitute misconduct under paragraph sixteen for purposes of vacating a suspended sentence.  Most importantly, paragraph sixteen is another of the provisions that the military judge failed to explain to Appellant.  The military judge erred in not explaining this provision as well as the sex offender treatment provision in the pretrial agreement.  Moreover, as previously indicated, the trial counsel should have been alert to the need for such explanations to protect the record for appellate review.

Appellant gave assurances to the military judge that he understood everything in the agreement based on his counsel's explanations.  These assurances cannot replace open court discussion by the military judge, as required.  Since the law mandates explanation on the record by the military judge of a pretrial agreement's provisions, I do not believe we may rely on Appellant's assurances of understanding without that explanation by the military judge.  We do not know what Appellant's counsel explained to him, and given counsel's erroneous advice regarding the reduction in paygrade provision, there is even more reason in this case not to rely on unrecorded explanations by counsel to Appellant regarding the sex offender treatment provision.

The record does not give us a clue as to the understanding of Appellant and the Convening Authority on what may be done if Appellant fails to comply with the treatment clause, or whether the Convening Authority's discretion in determining what constitutes noncompliance is limited in any manner, or, for that matter, whether any protections in this regard are afforded Appellant.  If action to vacate was contemplated as a result of Appellant not complying with the sex offender treatment provision, it is not supported by some indication in the agreement of a need to meet the terms of Article 72, UCMJ, and R.C.M. 1109 before taking

such action.  In short, the questions that remain as to what may constitute Appellant's noncompliance with treatment, the actions that the Convening Authority may take in response to such noncompliance, and the potential prejudice to Appellant that can result, make this case far different from *Felder*.

However, if we can take action at this stage that has the effect of removing these questions from any further bearing on the providence of Appellant's pleas, then our case will become more like *Felder*.  We can do just that by ruling that the Convening Authority is precluded from taking adverse action against Appellant for any violations of the sex offender treatment provision of the pretrial agreement.  As the Court of Appeals for the Armed Forces stated in *Felder*, "[i]t is paramount that we ensure there is a knowing, voluntary plea and that the 'accused understands the agreement' and the 'terms' of that agreement. R.C.M. 910(f)(4)." *Felder*, 59 M.J. at 445.  We cannot do this as long as the record fails to establish the understandings with regard to the questions we have posed.  The pretrial agreement does not address the subject and the military judge, along with trial and defense counsel, failed to elicit the understandings at trial, despite case law noted in *Felder* as establishing "the critical role that a military judge and counsel must play to ensure that the record reflects a clear, shared understanding of the terms of any pretrial agreement between the accused and the convening authority."  59 M.J. at 445.

In *Spriggs v. United States*, 40 M.J. 158, 163-164 (C.M.A. 1994), the Court of Military Appeals precluded the Convening Authority from taking certain actions under the terms of the pretrial agreement.  We, too, will restrict the Convening Authority in his implementation of the pretrial agreement by precluding future adverse actions.  In this manner, we can be assured that Appellant's guilty findings were based on knowing and voluntary pleas of guilty, since, even without explanation by the military judge, it is clear from the record that Appellant fully understood that he was required to enroll in and complete the sex offender treatment program described in the pretrial agreement.  What is unknown is Appellant's understanding of what can be considered noncompliance with this provision and the actions that the Convening Authority may take upon determining noncompliance.  Removal of these unanswered questions allows us to find Appellant's pleas provident.

**Viewing Child Pornography as Conduct Prejudicial to
Good Order and Discipline – Assignment III**

Appellant asserts that his plea to "watching child pornography" in violation of Article 134, UCMJ, was improvident because the military judge failed to elicit facts to sufficiently demonstrate that his conduct was prejudicial to good order and discipline. We disagree with this assertion. The record establishes that the pornography in question was being displayed on the monitor of another Coastguardsman's computer in a Coast Guard workplace. Appellant, in the company of other Coast Guard members, was watching the pornography being displayed. I am satisfied that the Appellant's viewing of this pornography was more than incidental. According to Appellant's stipulation of fact, he "continued to watch the computer screen as [a fellow Coastguardsman] opened and closed at least five adult and child pornography images in succession and did not take action to stop such conduct." Moreover, Appellant answered yes when the military judge inquired into whether a majority of these images were child pornographic images. We believe that public viewing of child pornography in this manner under these circumstances satisfied the "prejudicial to good order and discipline" element of the Article 134, UCMJ, offense. If Appellant had been looking at the images alone in the privacy of his own quarters, it might be a different matter entirely, but viewing publicly displayed images of this nature in a Coast Guard workplace in conjunction with other members of the Coast Guard clearly constitutes conduct prejudicial to good order and discipline from our perspective. For that reason, the assignment is rejected.

**Conclusion**

We find that the military judge committed error at trial by failing to explain all the provisions of the pretrial agreement, as elaborated upon in the foregoing discussion. We are unable to discern from this record the understanding of the parties as to the actions the Convening Authority may take in response to any noncompliance with the provision concerning sex offender treatment and what the Convening Authority may treat as noncompliance on Appellant's part. Except for this particular provision of the pretrial agreement, all other plea bargain requirements have been met, and we have no reason to believe that Appellant's pleas were not knowing and voluntary, based on the terms that have already been satisfied. Moreover, there has been no indication of prejudice to Appellant, except for the potential prejudice inherent

in the sex offender treatment provision. As previously discussed, we hereby order that the Convening Authority is barred from taking any adverse action against Appellant based on failure to comply with the sex offender treatment provision of the pretrial agreement. With that aspect of the pretrial agreement removed, we are able to find that Appellant's pleas were provident, and we do so find.

Based on our order to the Convening Authority, and upon review of the record in accordance with Article 66, UCMJ, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved and partially suspended below, are affirmed.

Judge KANTOR concurs.

Judge CAHILL concurs in part and dissents in part:

I join in the decision with respect to the assignment of error involving service of charges. I also concur that the military judge erred by failing to explain each element of the pretrial agreement, but apply a different analysis from that of Chief Judge Baum in concluding that such error was harmless. I disagree with the determination that Appellant's plea of guilty to watching child pornography was provident, and I would disapprove that finding on that basis. I also believe that a lesser sentence would not have been adjudged at trial if Appellant had not been convicted of that offense, and I join in affirming the sentence as approved and partially suspended below. However, I do not join in the majority's action to void the sexual treatment provision of the pretrial agreement and bar the Convening Authority from taking any action for a failure to comply with that provision.

In *United States v. Felder*, the Court of Appeals for the Armed Forces recently held that failure to explain a provision in a pretrial agreement was harmless error when an appellant failed to demonstrate material prejudice to a substantial right. *United States v. Felder*, 59 M.J. 444 (2004). I agree that it is extremely unlikely that any misconception that Appellant may have had about the effect of an automatic reduction in rate played a role in inducing him to enter into a pretrial agreement or to plead guilty at trial, or that he would have changed his pleas if the nonapplicability of that provision had been explained to him at trial. However, I do not believe

the principal opinion properly analyzes the effect of the military judge's failure to explain the terms of the requirement for him to enroll in a sexual treatment program, and I do not join with the majority in holding that provision to be unenforceable. Appellant did not allege any prejudice as a result of any misunderstanding of the sexual treatment program provision within the pretrial agreement. To our knowledge, based on the record, Appellant has not sought to withdraw from the treatment program, nor has the Convening Authority sought to vacate the suspension based upon any violation of that provision. Not only has Appellant not alleged any prejudice, the record demonstrates to me that Appellant fully understood the terms of his bargain.

Appellant faced possible confinement for over twenty years for his offenses. Under the pretrial agreement, the Convening Authority agreed to suspend any confinement in excess of ten months for a period of eighteen months after sentence was announced. The military judge imposed a sentence that included confinement for eighteen months. The Convening Authority complied with the pretrial agreement when taking action on the sentence.

At trial, Appellant indicated that he fully understood the terms of the pretrial agreement before he signed it. The military judge explained a number of provisions from the pretrial agreement, including waiver of the right to an administrative discharge board, waiver of an investigation under Article 32, UCMJ, and the requirement to enter into a stipulation of fact. For unknown reasons, the military judge failed to explain the provision requiring Appellant to participate in a sexual treatment program. However, I believe the record demonstrates Appellant's understanding of that term.

Participation in the pre-approved treatment program was a key element of Appellant's sentencing case at trial. In addition to introducing a detailed "psychosexual evaluation" that concluded that Appellant was in need of treatment to assist him in overcoming an addiction to pornography, his counsel introduced a nine-page exhibit that described the specific program addressed in the pretrial agreement. It not only described the program's treatment goals, but it included detailed rules for participation. With the exception of a goal addressing restitution, the remaining goals were restated verbatim in the pretrial agreement. During direct examination during the defense sentencing presentation, Appellant's mother acknowledged her awareness that participation in a sexual treatment program was a condition of the pretrial agreement. In an

unsworn statement, Appellant repeatedly referred to the counseling program. He indicated that he was "eager" to begin treatment following release from confinement, and that it was his "understanding that the treatment program will hold me highly accountable for my actions through polygraph testing." He intended to relocate to an area that was "within a short driving distance of the counseling I will be attending every week." He said that "I am going to be spending a large amount of my income on the treatment I am so eager to begin," and asked the military judge to consider his desire to quickly begin treatment when imposing sentence.

I believe the majority's action in essentially setting aside this provision is similar to the Court's unsuccessful efforts to reform a pretrial agreement in *United States v. Perron*, 57 M.J. 597 (C.G.Ct.Crim.App. 2001), *rev'd,* 58 M.J. 78 (2003). It is not necessary for a military judge to explain every possible type of misconduct that could potentially lead to vacation of a suspension. Similarly, I do not believe it would have been necessary for the military judge in this case to explain every possible manner in which the Appellant could fail to comply with the treatment provision. Far from not giving "a clue" as to Appellant's understanding, the record clearly demonstrates to me that Appellant fully understood his obligations under the pretrial agreement, and I do not believe that the military judge's error provides a basis to hold that this otherwise permissible provision is unenforceable. However, to ensure Appellant is not prejudiced, I would encourage the Convening Authority to interpret this provision in the light most favorable to the Appellant in any vacation proceeding, should one occur, and not seek to vacate the suspension based on a technical failure if Appellant otherwise satisfies his obligations to participate in an approved treatment program.

I would set aside the finding of guilty for the offense of "watching pornography" in violation of Article 134, UCMJ. Clearly, I do not condone watching child pornography or other inappropriate material while on duty at a Coast Guard station. However, the record fails to establish that Appellant should be held criminally responsible for his conduct. To me, it establishes only that Appellant failed to avert his eyes while someone else displayed pornographic images on a computer. The stipulation of fact indicates only that Appellant "viewed" several pornographic images, and that he "continued to watch the computer screen as [a fellow crewmember] opened and closed at least five adult and child pornographic images in succession and did not take action to stop such conduct." I note that Appellant was not charged

with dereliction of duty for failing to stop the other crewmember from displaying pornographic images, and there is no indication in the record that he had any responsibility to prevent a fellow nonrate from engaging in illegal activity. The record also fails to show that that he aided, abetted, or encouraged those illegal acts in any way. I am concerned that the majority has allowed the other child pornography offenses, for which Appellant was properly convicted, to improperly taint its view of this offense. I do not believe this Court would reach the same conclusion about Appellant's guilt of "watching" if there were no similar offenses on the charge sheet. Therefore, I would set aside the finding of guilty to this specification. I join in affirming the remaining charges and specifications, and, as I am convinced that the military judge would not have imposed a lesser sentence absent this specification and that the sentence should be approved, I join in affirming the sentence as approved and partially suspended below. However, for the reasons discussed above, I would not hold the sexual treatment provision of the pretrial agreement to be unenforceable and would not bar the Convening Authority from taking action pursuant to that provision.



For the Court,


Roy Shannon Jr.
Clerk of the Court