# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

_____

## No. 201600362

_____

## UNITED STATES OF AMERICA
Appellee

v.

## DILLON C. NYE
Religious Programs Specialist Third Class (E-4), U.S. Navy
Appellant

_____

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Commander Jason L. Jones, JAGC, USN.
Convening Authority: Commanding Officer, Naval Support Activity
Mid-South, Millington, TN.
Staff Judge Advocate's Recommendation: Lieutenant Nicole T.
Staring, JAGC, USN.
For Appellant: Lieutenant Rachel E. Weidemann, JAGC, USN; Captain
Daniel Douglass, USMC.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC,
USN; Lieutenant Robert J. Miller, JAGC, USN.

_____

Decided 18 January 2018

_____

**This opinion does not serve as binding precedent but may be cited as
persuasive authority under NMCCA Rule of Practice and Procedure
18.2.**

_____

Before GLASER-ALLEN, MARKS, and WOODARD, _Appellate Military
Judges_

_____

GLASER-ALLEN, Chief Judge:

A military judge sitting as a special court-martial convicted the appellant,
pursuant to his pleas, of unauthorized absence terminated by apprehension,
falsifying official records, wrongful use of marijuana, and larceny, in violation

of Articles 86, 107, 112a, and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 907, 912a, and 921. The military judge sentenced the appellant to reduction to pay grade E-1, confinement for 11 months, forfeiture of $900.00 pay per month for 11 months, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged and, except for the punitive discharge, ordered it executed.

The appellant raises a single assignment of error (AOE): the military judge erred by misinterpreting the pretrial agreement (PTA) and refusing to rule on whether the appellant was entitled to *Mason* credit. *United States v. Mason*, 19 M.J. 274 (C.M.A. 1985). After carefully considering the pleadings and the record of trial, we find no error materially prejudicial to the substantial rights of the appellant and affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The appellant was assigned to the base chapel at Naval Support Activity Mid-South in Millington, Tennessee. He was the designated custodian of funds for the command's Consolidated Religious Offering Fund (ROF) from September 2014 to October 2015. From August to October 2015, the appellant drafted 58 ROF checks to himself—totaling $32,600.00—and deposited them into his personal bank accounts. He concealed these actions by falsely representing in official records that ROF funds were properly contributed to charitable organizations. In January 2016, the appellant wrongfully smoked marijuana. When his command received the positive urinalysis results in March 2016, the appellant was placed on pretrial restriction.

The appellant served his pretrial restriction at Naval Air Technical Training Center, Naval Air Station (NAS) Pensacola, Florida. He served 93 days at the restriction barracks from 17 March to 17 June 2016. On 18 June 2016, he signed out of the restricted barracks indicating that he was going to medical and chow but instead began a period of unauthorized absence during which he traveled to Ohio. On 22 July 2016, the appellant was apprehended in Ohio pursuant to a deserter warrant and placed into pretrial confinement upon his return to military control.

## II. DISCUSSION

The appellant asserts that his pretrial restriction was tantamount to confinement, and he is therefore entitled to *Mason* credit. He further contends that the military judge erred by not ruling on this issue during his guilty plea.

"We review *de novo* the ultimate legal question of whether certain pretrial restrictions are tantamount to confinement." *United States v. King,* 58 M.J. 110, 113 (C.A.A.F. 2003) (citations omitted). However, we need not reach that

issue here. Like our superior court in *United States v. McFadyen,* we are "not called upon by the [AOE] to resolve the question of whether the appellant's treatment at NAS Pensacola amounted to pretrial punishment." 51 M.J. 289, 290 (C.A.A.F. 1999). Rather, the determinative issue is whether the appellant's PTA, which included a generic "waive all waivable motions" provision, properly removed the issue of *Mason* credit from his trial.[1] The Court of Appeals for the Armed Forces (CAAF) has held that a knowing and voluntary ". . . waiver of Article 13 motions is a permissible plea agreement term." *United States v. Felder*, 59 M.J. 444, 445-46 (C.A.A.F. 2004) (internal citation omitted).

Our sister service court declined to grant relief where an informed appellant had voluntarily "agreed [via pretrial agreement] to waive 'any motion for illegal pretrial punishment or pretrial restriction tantamount to confinement.'" *United States v. Barrett*, No. S31531, 2009 LEXIS 233, at *5, unpublished op. (A.F. Ct. Crim. App. 12 Jun 2009). We have also found that a PTA's "waive all waivable motions" provision is a valid term which precludes an appellant from raising waivable issues on appeal. *United States v. Murphy*, No. 201000262, 2010 CCA LEXIS 774, at *3-4 (N-M. Ct. Crim. App. 23 Nov 2010).

The CAAF has long recognized that as to their review authority and as a general matter "'[w]hen an error is waived . . . the result is that there is no error at all and an appellate court is without authority to reverse a conviction on that basis.'" *United States v. Chin*, 75 M.J. 220, 222 (2016) (quoting *United States v. Weathers*, 186 F.3d 948, 955, (D.C. Cir. 1999) (additional citation omitted)). However, the plenary review mandate of Article 66(c), UCMJ requires "the CCAs . . . to assess the entire record to determine whether to leave an accused's waiver intact, or to correct the error" even if the error was subject to a "waive all waivable motions" provision of a PTA. *Chin*, 75 M.J. at 223 (citing *United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002)). *See also*, *United States v. Nerad*, 69 M.J. 138, 145-46 (C.A.A.F. 2010).

Here, the military judge discussed the generic "waive all waivable motions" provision extensively. The *Mason* credit issue and potential conflict with the PTA provision first arose during a RULE FOR COURTS-MARTIAL (R.C.M.) 802, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) conference the day prior to trial. The military judge acknowledged that he had "kind of shot [trial defense counsel (TDC)] down" when they discussed the issue during that session and delayed further discussion of it until after sentencing evidence was admitted.[2]

---

[1] Appellate Exhibit II at 4, ¶ 18g.

[2] Record at 125.

Prior to hearing sentencing argument, the military judge noted that the TDC called the restriction barracks' Leading Petty Officer to testify about the conditions of restriction and submitted two defense exhibits regarding restriction barracks procedures. Similarly, in his unsworn statement, the appellant claimed that restriction was "way harder than the brig."[3] The military judge explained that regardless of his prior comments at the R.C.M. 802 conference, he would take all the evidence into account, including the conditions of pretrial restriction when "formulating an appropriate sentence, one way or another. Whether *Mason* credit exists or not, that evidence is going to be there."[4]

The military judge then specifically asked the TDC whether the appellant was "moving the court for *Mason* credit" because he thought doing so would violate the PTA.[5] The TDC's response was initially somewhat nuanced:

> Well, Your Honor, the defense position—and certainly we are not—do not want to make any motions in violation of the terms of the pretrial agreement. That is not our intent; however, our position is that this is not a motion, but rather it is equivalent to *Allen* credit that—the ruling in *Mason* simply extended the application of credit to restriction tantamount to confinement. Therefore, because in—in *U.S. v. Rock*, that cannot be bargained away by pretrial agreement, that it is a matter of credit and not something that a motion need be provided for. That aside, as you've said, Your Honor, we ask you to take it into consideration on sentence, and—and we'll do that through argument. But that—that's our position.[6]

The military judge noted that paragraph 18g of the PTA required that all waivable motions be waived.[7] He then explained:

> I know that the defense often kind of goes and presents information that would normally be presented in a motion.

---

[3] *Id.* at 123.

[4] *Id.* at 125.

[5] *Id.* at 125.

[6] *Id.* at 125-126.

[7] Appellate Exhibit II at 4, ¶ 18g. "I agree to waive all motions except those that are otherwise non-waivable, pursuant to R.C.M. 705(c)(1)(B). I have not been compelled to waive my right to due process, the right to challenge the jurisdiction of the court-martial, the right to a speedy trial, the right to raise the issue of unlawful command influence or any other motion that cannot be waived. I have no motions to bring and I am not aware of any motion that was waived pursuant to this provision."

> What the court asked earlier is, is there any illegal pretrial restraint or confinement, and the answer to that is no. And so I don't believe that the court has an immediate duty to say that this is restriction tantamount to confinement or not. The case law that I've looked up about *Mason* credit deals with—with people affirmatively coming to court and saying "this is *Mason* credit; give me *Mason* credit;" that—that's my experience as a—as a litigator also. So I'm not inclined to make a ruling this is restriction tantamount to confinement, which essentially flips this into *Allen* credit, day for day, unless the defense stands up and says "I want to make this motion," at which point I'd look over at the government and say, "Well, does this break the PTA? What are you all going to do?" So I'm going to take everything—all this information that's come at me in formulating a sentence, but I don't think the court, at this time, needs to make a decision whether this is or isn't *Mason* credit. . . .
>
> DC: Understood, Your Honor. And just for the record, we--we understand that we did waive any Article 13 motion, which is why we didn't put that forward earlier.[8]

In light of this discussion, the military judge reasoned that he did not need to rule on the issue because the TDC was not actually making a motion for *Mason* credit. And he reiterated his earlier position that he would consider "all this information that's come at me in formulating a sentence[.]"[9] The TDC was then permitted to argue the conditions of the appellant's pretrial restriction as a matter in mitigation.

While the military judge disagreed with the TDC regarding the PTA waiver's effect on *Mason* credit, he also clearly understood his responsibility to ensure a knowing and voluntary Article 13, UCMJ waiver and to consider the nature of pretrial restraint in formulating his sentence—agreeing repeatedly to do so. That the military judge's sentence was nearly at the jurisdictional maximum for a special court-martial does not alone imply he failed to properly consider the pretrial restriction conditions. Indeed, when considering the entire record, it reflects at most that the military judge simply disagreed with the weight that the appellant desired him to give that restriction.

---

[8] Record at 126-27.

[9] *Id.* at 127.

The TDC ultimately was clear that she was not raising the Article 13 motion. She secured a beneficial PTA sending the case to a special court-martial by, *inter alia*, agreeing to waive all waivable motions. She understood that raising an Article 13 motion risked the deal and the appellant potentially going to general court-martial for his offenses. The colloquy between the military judge and TDC makes it clear that she understood the meaning and effect of the waiver provision—the voluntary relinquishment of a known right—while making a good faith effort nonetheless to ensure the military judge gave appropriate credit for the appellant's pretrial restriction. The appellant is unable to produce any case supporting his position that *Mason* credit is an unwaivable motion, and the CAAF has recognized otherwise. *McFadyen,* 51 M.J. at 290-91.

Therefore, we agree with the government that the PTA's "waive all waivable motions" provision was valid, and that the *Mason* credit motion was knowingly and voluntarily waived. After consideration of the entire record we are also satisfied that the military judge properly considered both the duration of pretrial restraint and the conditions of that restraint in determining an appropriate sentence; eliminating any potential prejudice to the appellant.

Although not raised as error, we note that the court-martial order (CMO) incorrectly reflects a finding of not guilty to Charge III and its sole specification. The appellant does not assert, and we do not find, any prejudice resulting from this error. Nevertheless, the appellant is entitled to have the CMO accurately reflect the results of the proceedings. *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998). We thus order corrective action in our decretal paragraph.

### III. CONCLUSION

The findings and the sentence as approved by the CA are affirmed. The supplemental CMO shall correctly reflect that the appellant pleaded not guilty to Charge III and its sole specification and that this offense was withdrawn and dismissed without prejudice prior to the entry of findings by the military judge.

Senior Judge MARKS and Judge WOODARD concur.

For the Court

R.H. TROIDL
Clerk of Court

